United States District Court
Eastern District of New York                                    1:18-cv-07251

Leslie Bowman individually and on behalf
of all others similarly situated

                                        Plaintiff

                    - against -                                 Complaint

Tropicana Products, Inc.

                                        Defendant

    Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining

to plaintiffs, which are based on personal knowledge:

    1.      Tropicana, Inc. ("defendant") manufactures, distributes, markets, labels and sells

fruit juices named "Essentials Probiotics" in 32 and 10 oz. bottles (the "Products").

    2.      The Products contains Orchard Green, Pineapple Mango, Strawberry Banana and

Peach Passion Fruit juice blends which correspond to the purported distinctive flavors.

    3.      The Products are sold to consumers by third parties from stores and online.

    4.      The Products' common principal display panel representations include the brand

Tropicana, "essentials" and "PROBIOTICS" in the same font, a vignette – i.e., strawberry banana

has an image of a strawberry, banana and an apple, a common or usual name - "Flavored Blend of

Apple, Mango, Pineapple and Banana Juices from Concentrate with Other Natural Flavors,

Probiotics and Vitamin C" (Pineapple Mango).

    5.      The information panel contains a nutrition facts box, ingredient list and text

"Contains Active Probiotic Bifidobacterium Lactis."

1



**100% Juice**

**Nutrition Facts:** Serv. Size: 10 fl oz (296mL), Servings: 1, Amount Per Serving: **Calories** 170, Fat Cal 0, **Total Fat** 0g (0% DV), Sat Fat 0g (0% DV), Trans Fat 0g, **Cholest** 0mg (0% DV), **Sodium** 15mg (1% DV), **Potassium** 420mg (12% DV), **Total Carb** 41g (14% DV), Sugars 37g, **Protein** 1g, Vitamin A (15% DV), Vitamin C (200% DV). Not a significant source of dietary fiber, calcium and iron. Percent Daily Values (DV) are based on a 2,000 calorie diet.

**INGREDIENTS:** APPLE JUICE, MANGO PUREE, PINEAPPLE JUICE AND BANANA PUREE FROM CONCENTRATE (FILTERED WATER, APPLE JUICE, MANGO PUREE, BANANA PUREE AND PINEAPPLE JUICE CONCENTRATES), VEGETABLE JUICE CONCENTRATE (COLOR), BIFIDOBACTERIUM LACTIS, NATURAL FLAVORS AND ASCORBIC ACID (VITAMIN C).

**CONTAINS ACTIVE PROBIOTIC BIFIDOBACTERIUM LACTIS**

6.    The Products are misleading because their name indicates they contain probiotics, claimed to be "essential."

7.    Consumers are familiar with the term "essential" when it comes to vitamins and nutrients because this is the jargon used for dietary recommendations from grade school and onwards (i.e., "7 essential nutrients, vitamins and minerals").

8.    However, probiotics are neither nutrients, vitamins or minerals.

9.    In 2015, 3.9 million adults in the United States used various forms of probiotics or

2

prebiotics, a fourfold increase from 2007.

10.    Compared to the overall growth in the nutritional supplement industry 5% in 2014, probiotics grew 14.2% with nearly $1.4 billion in sales.

11.    Though pediatricians once recommended fruit juice to parents as a source of vitamin C and additional water, recognition of the detrimental effects of high sugar content, increased calories and dental caries, has caused a re-evaluation.[1]

12.    Other pediatricians posited that "Juice may also be a 'gateway beverage'" to sugary beverages like sodas as children grow up.[2]

13.    The Products contain between 27 and 37 grams of sugar per serving, almost as much as a can of Pepsi, with 41 grams of sugar.

14.    The purpose of adding probiotics was to make otherwise non-appealing fruit juice more desirable and is misleading for various reasons.

15.    In light of consumers' increased aversion to sugary beverages, the addition of "probiotics" tips the balance towards purchasing them instead of a product with less sugar.

16.    The term "Probiotics" implies a health benefit and refers to an inherent indication of a functionality.

17.    The label represents that probiotics are present in a significant quantity such that they will have a beneficial restorative, ameliorative, nutritional or physiological effect, when this is literally false.

18.    By labeling the Products as "Essentials," the reasonable consumer gets the

---

[1] Melvin B. Heyman et al.,  "Fruit juice in infants, children, and adolescents: current recommendations." American Academy of Pediatrics, June 2017; The difficult question about fruit juice and kids, The Washington Post, July 21, 2018, accessed December 8, 2018; Frank B. Hu, "Resolved: there is sufficient scientific evidence that decreasing sugar-sweetened beverage consumption will reduce the prevalence of obesity and obesity-related diseases." Obesity reviews 14.8 (2013): 606-619.
[2] Erika R. Cheng et al., "Seriously, Juice is not Healthy," The New York Times, July 7, 2018

impression that a minimum nutrient level, range or other allowance has been established by proper authorities, when none exists.

19.    While defendant's website for the Products may indicate that no such level exists, the Products are bereft of such a disclaimer.

20.    The result is that plaintiff and consumers will believe that probiotics are necessary or appropriate, and thereby purchase and consume the Products.

21.    Probiotics have not been demonstrated to have any beneficial effect on the non-elderly, healthy individuals or those not suffering from very specific, life-threatening conditions (often occurring in infants),

22.    When adding nutrients or substances to foods, it is necessary to add the kinds and quantities associated with the class of foods involved.

23.    Here, the Products irrationally contain substances which naturally occur in dairy products, to fruit juices.

24.    Fruit juice is not an appropriate carrier for probiotics since their viability is greatly reduced due to the acidic environment.

25.    The presence of probiotics in the Products serves to prop up an otherwise disfavored product type by the inclusion of a scientific-sounding term with obvious positive connotations (similar to "antibiotics" but the opposite; derived from the Greek for "supporting life").

26.    According to the International Scientific Association for Probiotics and Prebiotics, Probiotics are live microorganisms that, when administered in adequate amounts, confer a health benefit on the host.

27.    Fermented dairy foods such as yogurt, fermented milk and cheese are the major vehicle in delivering probiotics

4

28.    Alterations in the composition of the gut microbiota are associated with a number of gastrointestinal (GI) conditions, including diarrhea, inflammatory bowel diseases (IBD), and liver diseases.

29.    Probiotics are believed to provide a protective effect in the GI tract through increase microbial diversity and reducing the risk for colonization by pathogenic bacteria.

30.    Defendant's website – not relied upon or viewed by plaintiff in purchasing the Products – contains information about probiotics and their alleged usefulness in the Products.





5

31.    In reality, probiotics in the Products are of no demonstrated value, especially to persons who are not suffering from a digestive or other illness.

32.    A recent meta-analysis of 14 meta-analyses performed by the Cochrane Collaboration, examined the use of probiotics in GI disorders and concluded that there has been insufficient evidence to determine if probiotics even conferred any benefit.[3]

33.    Another meta-analysis of probiotic usage began with 1287 studies, but only seven randomized clinical trials (RCTs) of healthy adults were found to be of medium to high quality.

34.    In those seven, no effects were observed on the fecal microbiota composition in terms of α-diversity, richness, or evenness in any of the included studies when compared to placebo.[4]

35.    The reviews reach similar conclusions: while probiotics may have a positive effect on a specific, serious health condition, the variety of strains, small sample sizes, variations in diets of test subjects, dosage and delivery mechanism, there is no conclusion probiotics are beneficial.

36.    The specific probiotic strain in the Products, *Bifidobacterium lactis* (*B. lactis* ) HN019, has been subjected to industry-sponsored meta-analysis of the *four* studies located in the literature, all by the same author or group of authors.[5]

37.    The subjects in these studies were senior citizens, since the purpose was to strengthen immune function in a group that was at elevated risk for infections.

38.    In each of the studies, the intervention duration was (i) no less than three weeks, (ii) the dosage of HN019 was a minimum 5 billion colony forming units (CFUs, a method of

---

[3] Elizabeth A. Parker et al., "Probiotics and gastrointestinal conditions: An overview of evidence from the Cochrane Collaboration." *Nutrition* 45 (2018): 125-134 (the Cochrane Collaboration is "one of the first and most highly regarded organizations focused on the production and dissemination of systematic reviews of health care interventions").
[4] Nadja B. Kristensen, et al., "*Alterations in fecal microbiota composition by probiotic supplementation in healthy adults: a systematic review of randomized controlled trials*" Genome Medicine 8.1 (2016).
[5] Larry Miller et al., "The Effect of Bifidobacterium animalis ssp. lactis HN019 on cellular immune function in healthy elderly subjects: systematic review and meta-analysis." Nutrients 9.3 (2017): 191 (see references 26-29 as the four studies selected and H.S. Gill of Fonterra Research as author on each study).

measurement for probiotics) and (iii) the carrier of the probiotics was low-fat milk (dairy).

39.    In contrast to the conditions of the selected four studies, a reasonable consumer will not drink the Products daily for three weeks.

40.    Additionally, the Products purport to contain "one billion live and active cultures" (CFU), claimed to be "an effective amount," compared to the 5 billion CFU in the meta-analysis.



41.    However, the studies which may have shown beneficial effects from *B. lactis* only were performed on a specific segment of the population (elderly), such that any conclusions are not be applicable to the general population.

42.    Moreover, in those few studies which have demonstrated positive effects from HN019, the probiotics were consumed in milk or other dairy products.

43.    Any analysis which demonstrates beneficial effects of HN019 through a dairy carrier is insufficient to show viability of probiotics in non-dairy foods such as fruit juice, since this product's naturally low pH makes survival difficult.

44.    The studies purporting to substantiate defendant's claims are poorly designed, incredible and represent the view of a minority of scientists.

45. Of the probiotic strains examined in fruit juice, HN019 was actually the least viable following its inoculation into the fruit juice, compared to the *Lactobacillus* strains.[6]

46. Excluding tax, the Products cost no less than $3.99 per Product, a premium price compared to similar products.

## Jurisdiction and Venue

47. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

48. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

49. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

50. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

51. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Class Allegations

52. The classes consist of all consumers in the following states: all, New York who purchased any Products with actionable representations during the statutes of limitation.

53. A class action is superior to other methods for fair and efficient adjudication.

54. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

55. Common questions of law or fact predominate and include whether the

---

[6] Marek Sady et al., "The suitability of different probiotic strains for the production of fruit-whey beverages," Acta Sci. Pol. Technol. Aliment. 16.4 (2017)

representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

56.   Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

57.   Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

58.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

59.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

60.   Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

61.   Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

<u>Parties</u>

62.   Plaintiff is a citizen of Queens County, New York.

63.   Defendant is a Delaware corporation with its principal place of business in Manatee County, Florida.

64.   In 2017 and/or 2018, plaintiff purchased one or more of the Products for personal consumption, for no less than $3.99 per product, excluding tax, within this district and/or State.

65.   Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

66.   Plaintiff would purchase the Products again if there were assurances that the probiotics in the Products could cause a beneficial health or other salutary effect and that the

representations were no longer misleading.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

67.    Plaintiffs incorporates by references all preceding paragraphs.

68.    Defendant's representations are false, unfair, deceptive and misleading

69.    Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

70.    Plaintiff desired to purchase products which were as described by defendant.

71.    The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

72.    Plaintiff incorporates by references all preceding paragraphs.

73.    Defendant misrepresented the composition of the Products and that it was capable of causing positive and salutary health effects.

74.    Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

75.    This duty is based, in part, on defendant's invocation of a term, "probiotics," that has an inherent implication of positive functionality, to promote a product type which would otherwise be avoided.

76.    Defendant negligently misrepresented and/or negligently omitted material facts.

77.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

78.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

79.    Plaintiff incorporates by references all preceding paragraphs.

80.    Defendant manufactures and sells products which purport to contain substances and elements which are beneficial to human health.

81.    Defendant warranted those aspects to plaintiff and class members, when this was not truthful and was misleading.

82.    The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

83.    Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

84.    Plaintiff incorporates by references all preceding paragraphs.

85.    Defendant's purpose was to mislead consumers who seek foods that are beneficial to their health and well-being and lack components which may cause greater risk of ailments or obesity.

86.    Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

87.    Plaintiff incorporates by references all preceding paragraphs.

88.    Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant(s) to correct such practices to comply with the law;

3.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5.  Such other and further relief as the Court deems just and proper.

Dated:   December 19, 2018

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
891 Northern Blvd., Suite 201
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

Levin-Epstein & Associates, P.C.
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
(212) 792-0046
joshua@levinepstein.com

1:18-cv-07251
United States District Court
Eastern District of New York

Leslie Bowman individually and on behalf of all others similarly situated

Plaintiffs

- against -

Tropicana Products, Inc.

Defendant(s)

# Complaint

Sheehan & Associates, P.C.
891 Northern Blvd., #201
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  December 19, 2018

/s/ Spencer Sheehan
Spencer Sheehan